**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

---

SAMANTHA PINEDA,
*on behalf of herself and the Class,*

Plaintiff,

v.

CHRISTINE VALMY INTERNATIONAL SCHOOL, INC.,
MARINA VALMY DE HAYDU, and
PETER DE HAYDU,

Defendants.

---

Case No:

**CLASS ACTION COMPLAINT**

Plaintiff, SAMANTHA PINEDA ("Plaintiff"), on behalf of herself and others similarly situated, by and through her undersigned attorneys, hereby files this Class Action Complaint against Defendants, CHRISTINE VALMY INTERNATIONAL SCHOOL, INC. (the "Corporate Defendant"), MARINA VALMY DE HAYDU, and PETER DE HAYDU (collectively the "Individual Defendants," and together with the Corporate Defendant, the "Defendants") and states as follows:

## INTRODUCTION

1. Plaintiff alleges that, pursuant to the New York Labor Law ("NYLL"), she and similarly situated individuals are entitled to recover from Defendants: (1) unpaid overtime premiums due to straight time pay for hours worked over 40 in a workweek, (2) unpaid wages, including overtime wages, due to unidirectional rounding, (3) unpaid wages and overtime wages due to timeshaving compensable break periods, including short rest periods, (4) statutory penalties, and (5) attorneys' fees and costs.

2. Plaintiff alleges on behalf of similarly situated individuals, pursuant to the New Jersey Wage Payment Law ("NJWPL") and the New Jersey Wage and Hour Law ("NJWHL"), that similarly situated individuals working for Defendants in New Jersey are entitled to recover from Defendants: (1) unpaid overtime premiums due to straight time pay for hours worked over 40 in a workweek, (2) unpaid wages and overtime wages due to unidirectional rounding, (3) unpaid wages, including overtime wages, due to timeshaving compensable break periods, including short rest periods, (4) statutory penalties, (5) attorneys' fees and costs.

**JURISDICTION AND VENUE**

3. The Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1332, because this is a class action, as defined by 28 U.S.C § 1332(d)(1)(B), in which a member of the putative class is a citizen of a different state than Defendant, and the amount in controversy exceeds the sum or value of $5,000,000, excluding interest and costs. See 28 U.S.C. § 1332(d)(2).

4. Plaintiff estimates that there are at least 60 Class Members (as defined below) working at any given time. With turnover and temporary workers being brought in over the six-year Statute of Limitations, the Class will number over 100 members. During Plaintiff's two (2) years of employment, she became aware of approximately 20 Class Members who either left and were replaced or were hired for short term work. Extrapolating over the entire period, the Class numbers well over 100 members.

5. This Court has jurisdiction over this controversy pursuant to diversity of citizenship under 28 U.S. Code § 1332 as well. Plaintiff is a citizen of New Jersey, and Defendants are citizens and/or incorporated with principal places of business in different states (namely New York State). Further the amount in controversy exceeds $75,000.

6. Venue is proper in the Southern District pursuant to 28 U.S.C. § 1391(b)(3) as the circumstances giving rise to this action occurred in whole in New York County.

## PARTIES

7. Plaintiff, for all relevant time periods, was a resident of Hudson County, New Jersey.

8. Defendants provide education services for those seeking an education in the beauty industry. They provide schooling estheticians and those providing skin care treatment. Defendants have campuses for their education services at the below two locations:

| **The New York Campus** | **The New Jersey Campus** |
|---|---|
| Christine Valmy International School for Esthetics, Skin Care & Makeup<br>1501 Broadway, Suite 700<br>New York, NY 10036 | Christine Valmy International School of Esthetics & Cosmetology<br>201 Willowbrook Blvd., 8th Floor<br>Wayne, NJ, 07470 |

9. Corporate Defendant CHRISTINE VALMY INTERNATIONAL SCHOOL, INC. is a domestic business corporation which operates the "Christine Valmy International School for Esthetics, Skin Care, and Makeup" located at 1501 Broadway, Suite 700, New York, NY 10036 (the "School"). The School is a proprietary school which offers vocational and occupational training in esthetics, waxing, skin care, nails, and make up.[1] The School was founded in 1965 by Christine Valmy.

10. Individual Defendant MARINA VALMY DE HAYDU is the daughter of Christine Valmy and the President and Co-Owner of Corporate Defendant and Director of the School. *See* **Exhibit A, pg. 7** (the School's Catalog and Student Handbook for year 2025, which identifies the Individual Defendant's above executive positions at the School); *see also* **Exhibit B, pg. 2** (the School's licensing information registered with the New York State Bureau of Proprietary School Supervision, which identifies the Individual Defendant's above position as Director of the School).

[1] https://www.christinevalmy.com/ny-beauty-school-esthetics-makeup/

11. Individual Defendant PETER DE HAYDU is the husband of Individual Defendant MARINA VALMY DE HAYDU[2] and the Chief Operating Officer, President, and Co-Owner of Corporate Defendant. *See* **Exhibit A, pg. 7** (the School's Catalog and Student Handbook for year 2025, which identifies the Individual Defendant's above executive positions at the School); *see also* **Exhibit C** (Corporate Defendant's CHRISTINE VALMY INTERNATIONAL SCHOOL, INC. corporate information registered with the New York State Department of State's Division of Corporations, which identifies the Individual Defendant as the Chief Executive Officer of the Corporate Defendant).

12. The two Individual Defendants are husband and wife. The two Individual Defendants collectively own and operate the School by and through the two Corporate Defendants.

13. At all relevant times, the two Individual Defendants each exercised direct and actual functional control and oversight of the business and financial operations, as well as all other general affairs, of the Corporate Defendant and the School.

14. At all relevant times, the two Individual Defendants each exercised direct and actual control over the employment terms and conditions of Plaintiff and Class Members.

15. At all relevant times, the two Individual Defendants each held and exercised direct and actual authority, control, and oversight over all Managers and Supervisors of Plaintiff and Class Members.

16. At all relevant times, the two Individual Defendants each exercised the direct and actual power and authority (and also delegated the power and authority to managers and supervisors) to: (i) hire and fire all employees and Managers of the School (including Plaintiff and Class Members), (ii) determine their hourly rates or salaries, frequencies of payments, and means

[2] https://www.nytimes.com/1982/09/13/style/marina-valmy-becomes-a-bride.html

of payments, (iii) establish, alter, or otherwise affect their work schedules, (iv) otherwise directly or indirectly affect the qualities, terms and conditions of their employments, and (v) maintain their employment records.

17. At all relevant times, the two Individual Defendants each ensured that their School operated efficiently and profitably by frequently visiting their School to: (i) inspect the operations and quality of education of the Restaurants, (ii) meet and confer with the School's management teams to discuss education, curriculum, tuition, budgeting, and overall status of the School and its employees and students, (iii) pick up or drop off supplies or paperwork, (iv) personally supervise employees (including Plaintiff and Class Members) and managers and monitor their individual performances of duties and behaviors to ensure they effectively completed their job duties, (v) directly or indirectly reprimand any employees (including Plaintiff and Class Members) or managers who did not perform their duties sufficiently or correctly, or displayed inappropriate behavior.

18. Throughout the relevant period, Plaintiff and Class Members would be informed, notified, or alerted as to the status, roles, and executive positions of the two Individual Defendants. At all relevant times, Plaintiff and Class Members had the ability to, and/or actually did, complain to either of the two Individual Defendants (via direct contact during their visits to the School or by digital communications) directly regarding any of the terms of their employments, and both of the two Individual Defendants would have the actual power and authority to immediately, directly, and actually affect any changes to the qualities and terms of their employments to appease their complaints (including, but not limited to, immediately changing their schedules, compensation, locations, or positions).

19. At all relevant times, each of the Individual Defendants' roles, and the decisions made in connection to their roles, directly and actually affected the nature, conditions, and circumstances of Plaintiff's and Class Members' employments.

20. At all relevant times, the Corporate Defendant was and continues to be an "enterprise engaged in commerce" within the meaning of the NYLL, NJWPL, and NJWHL.

21. At all relevant times, the work performed by Plaintiff and Class Members was directly essential to the business operated by Defendants.

## CLASS ALLEGATIONS

22. Plaintiff brings claims for relief pursuant to the Fed. R. Civ. P. § 23, on behalf of all hourly paid employees (including Receptionists, Office Clerks, Student Services Advisors, Student Relations Advisors, Enrollment Advisors, Admissions Advisors, Financial Aid Advisors, Career Advisors, Counselors, Seminar Coordinators, Inventory Associates, Drivers, Product Managers, Marketing Specialists, Sales Specialists, and Administrative Assistants, among others) employed by Defendants in any State where Defendants do business, on or after the date that is six years six (6) years and 228 days (pursuant to NY's Executive Order tolling during the COVID pandemic) before the filing of the Complaint in this case as defined herein (the "Class" or "Class Members").

23. The Class Members are readily ascertainable. The number and identity of the Class Members are determinable from the records of Defendants. The hours assigned and worked, the position held, and rates of pay for each Class member may also be determinable from Defendants' records. For purposes of notice and other purposes related to this action, their names and addresses are readily available from Defendants. Notice can be provided by means permissible under Fed. R. Civ. P. § 23.

24. The proposed Class is so numerous such that a joinder of all members is impracticable, and the disposition of their claims as a class will benefit the parties and the Court. Although the precise number of such persons is unknown because the facts on which the calculation of that number rests presently within the sole control of Defendants, there is no doubt that there are more than forty (40) members of the Class.

25. Plaintiff's claims are typical of those claims that could be alleged by any member of the Class, and the relief sought is typical of the relief, that would be sought by each member of the Class in separate actions. All the Class members were subjected to the same corporate practices by Defendants, as alleged herein, of Defendants' (1) failure to pay overtime wages and premiums for all hours worked over 40 in a workweek, (2) failure to compensate wages for all hours worked, (3) failure to provide proper wage notices and statements to Class Members. Defendants' corporate-wide policies and practices affected all Class Members similarly, and Defendants benefited from the same type of unfair and/or wrongful acts as to each Class Member. Plaintiff and other Class Members sustained similar losses, injuries, and damages arising from the same unlawful policies, practices and procedures of Defendants.

26. Plaintiff is able to fairly and adequately protect the interests of the Class and has no interests antagonistic to the Class. Plaintiff is represented by attorneys who are experienced and competent in both class action litigation and employment litigation and have previously represented plaintiffs in wage and hour cases.

27. A class action is superior to other available methods for the fair and efficient adjudication of the controversy – particularly in the context of the wage and hour litigation where individual class members lack the financial resources to vigorously prosecute a lawsuit against corporate defendants. Class action treatment will permit a large number of similarly situated

persons to prosecute common claims in a single forum simultaneously, efficiently, and without the unnecessary duplication of efforts and expense that numerous individual actions engender. Because losses, injuries and damages suffered by each of the individual Class Members are small in the sense pertinent to a class action analysis, the expenses and burden of individual litigation would make it extremely difficult or impossible for the individual Class Members to redress the wrongs done to them. On the other hand, important public interests will be served by addressing the matter as a class action. The adjudication of individual litigation claims would result in a great expenditure of Court and public resources; however, treating the claims as a class action would result in a significant saving of these costs. The prosecution of separate actions by individual members of the Class would create a risk of inconsistent and/or varying adjudications with respect to the individual Members of the Class, establishing incompatible standards of conduct for Defendants and resulting in the impairment of Class Members' rights and the disposition of their interests through actions to which they were not parties. The issues in this action can be decided by means of common, class-wide proof. In addition, if appropriate, the Court can, and is empowered to, fashion methods to efficiently manage this action as a class action.

28. Defendants and other employers throughout the state violate the New York Labor Law. Current employees are often afraid to assert their rights out of fear of direct or indirect retaliation. Former employees are fearful of bringing claims because doing so can harm their employment, future employment, and future efforts to secure employment. Class actions provide Class Members who are not named in the Complaint a degree of anonymity, which allows for the vindication of their rights while eliminating or reducing these risks.

29. There are questions of law and fact common to the Class which predominate over any questions affecting only individual Class Members, including:

a) Whether Defendants employed Plaintiff and Class Members within the meaning of the New York Labor Law, NJWPL, and NJWHL;

b) What are and were the policies, practices, programs, procedures, protocols, and plans of Defendants regarding the types of work and labor for which Defendants did not pay Plaintiff and Class Members properly;

c) At what common rate, or rates subject to common methods of calculation, were and are Defendants required to pay Plaintiff and Class Members for their work;

d) Whether Defendants properly notified Plaintiff and Class Members of their hourly rates and overtime rates;

e) Whether Defendants properly notified Plaintiff and Class Members of their exemption status;

f) Whether Defendants provided Plaintiff and Class Members with proper wage and hour notices, at their dates of hiring and annually, per requirements of the New York Labor Law, NJWPL, and NJWHL ;

g) Whether Defendants provided Plaintiff and Class Members with proper wage statements with each payment of wages, as required by New York Labor Law, NJWPL, and NJWHL ;

h) Whether Defendants provided proper wage notices to Plaintiff and Class members per requirements of State wage laws; and

i) Whether Defendants provided proper wage statements to Plaintiffs and Class members per requirements of State wage laws

j) Whether Defendants paid Plaintiff and Class Members the prevailing New York Labor Law, NJWPL, and NJWHL minimum wage for all hours worked; and

k) Whether Defendants properly compensated overtime premiums to Plaintiff and Class Members for all their overtime hours worked under New York Labor Law, NJWPL, and NJWHL

## STATEMENT OF FACTS

### i. Background of Plaintiff's Employment with Defendants

30. In or around August 2020, Plaintiff was hired by Defendants to work as an Office Clerk for the student services department of Defendants' School located at 1501 Broadway, Suite 700, New York, NY 10036. Plaintiff's employment with Defendants was terminated in or around March 2022.

31. Plaintiff's duties included (i) general receptionist duties, (ii) performing financial aid eligibility audits, (iii) performing student academic evaluations, and (iv) issuing and handling refund checks, among other duties.

32. Throughout her employment, Plaintiff was regularly scheduled by Defendants to work five (5) days per week for eight (8) hours per day (from 11:00 a.m. to 7:00 p.m.) for a total of forty (40) hours per week. However, every day, Defendants required Plaintiff to stay after her scheduled shifts for one to two (1-2) hours to perform additional work. In total, Plaintiff worked approximately fifty (50) hours per week. Defendants required Class Members to work similar amounts of days and hours.

33. Throughout her employment, Plaintiff was paid by Defendants at an hourly rate of $18.00 per hour, for all hours worked, with no separate overtime rate. At all relevant times, Defendants paid Class Members at similar hourly rates and without separate overtime rates.

34. At all relevant times, Defendants compensated Plaintiff's and Class Members weekly wages at a bi-weekly frequency.

**ii. Plaintiff's Claim of Unpaid Overtime Premiums due to Straight Time Pay for Hours Worked Over 40 in a Workweek**

35. At all relevant times, Defendants never compensated Plaintiff and Class Members any overtime premiums for all hours they worked over 40 per workweek, in violation of the NYLL and NJ Laws.

36. Throughout her employment, Plaintiff was always required by Defendants to work over 40 hours per workweek. However, at all relevant times, Defendants always failed to compensate any overtime premiums to Plaintiff for any hours she worked over 40 per workweek. Instead, Defendants compensated all of Plaintiff's overtime hours at her regular hourly rate of

$18.00 per hour. For example, *see* **Exhibit D**, Plaintiff's paystub where Plaintiff was compensated at a straight time rate for 97 hours for the pay period of September 1, 2020 to September 15, 2020.

37. Defendants did not claim Plaintiff was exempt from overtime during her employment.

38. Plaintiff's paystubs, provided to her by Defendants, identify her as an hourly employee.

39. Defendants could not have claimed Plaintiff was an exempt employee as her job duties did not meet the requirements for any exemption from overtime.

40. Defendants could not have claimed Plaintiff was an exempt from overtime employee as she did not meet the salary threshold requirements for an exemption as set forth in 12 N.Y.C.R.R. § 142-2.14.

41. Defendants could not have claimed Plaintiff was an exempt from overtime employee as she did not meet the salary basis payment requirements for an exemption as set forth in the Fair Labor Standards Act ("FLSA"), including the FLSA's § 13 (a) and 29 C.F.R. Part 541 and State wage laws.

42. Class Members were similarly not designated as exempt from overtime employees, similarly identified as hourly workers, and similarly did not meet the requirements for an exemption from overtime if properly and timely claimed.

43. Throughout her employment, Plaintiff made multiple complaints to Defendants and their management regarding Defendants' failure to pay overtime premiums. Each time Plaintiff complained, she was told that she was not eligible to receive overtime pay. Each time Plaintiff inquired as to Defendants' reasoning for not paying overtime premiums, Plaintiff was told that she was "paid bi-weekly" – which is not a factor of exemption classification under neither New York

law (*see* 12 N.Y.C.R.R. § 142-2.2) nor the federal laws that State laws adopt (*see id.; see also* 29 U.S.C §§ 207, 213).

44. At all relevant times, Defendants similarly required Class Members to work over 40 hours per workweek and similarly failed to compensate them any overtime premiums for any of their hours worked over 40 per workweek.

45. At all relevant times, Defendants knowingly and willfully operated their business with a policy of failing to pay Plaintiff and Class Members any overtime premiums for all hours they worked over 40 hours per workweek.

**iii. Plaintiff's Claim of Unpaid Wages and Overtime due to Timeshaving All Compensable Break Periods**

46. At all relevant times, Defendants failed to compensate Plaintiff and Class Members for all hours they worked due to a policy of timeshaving their break periods, in violation of the NYLL and New Jersey labor law.

47. At all relevant times, Defendants required Plaintiff and Class Members to take two breaks per workday: (i) one meal break for 45 minutes, and (ii) one short rest period for 15 minutes.

48. At all relevant times, Defendants required Plaintiff and Class Members to clock in and out for every break in order to record their break hours taken. However, Defendants (i) required Plaintiff and Class Members to perform work off-the-clock through their 45-minute meal breaks on a regular basis, and (ii) failed to compensate employees for all short rest periods of 15 minutes.

49. On a daily basis throughout Plaintiff's employment, Defendants required Plaintiff to (i) clock out for a mandatory unpaid 45-minute meal break period and (ii) continue performing work off-the-clock while eating her lunch at her desk, throughout this meal period. However, Defendants always failed to compensate Plaintiff for this off-the-clock work which they required her to perform.

50. Additionally, on a daily basis throughout Plaintiff's employment, Defendants required Plaintiff to clock out for a mandatory unpaid 15-minute short rest period.

51. However, Defendants were required to compensate all of Plaintiff's short rest periods. It is the New York State Department of Labor's opinion that "[w]hile the Labor Law does not require that employers provide rest periods of short duration, if they are provided to or taken by employees, they must be counted as working time. The Department follows Federal Regulation 29 C.F.R. § 785.18 which provides that rest periods of short duration, running from 5 minutes to about 20 minutes, are common in industry. . . They must be counted as hours worked." (emphasis added). *See* **NYSDOL's Meal and Rest Periods Frequently Asked Questions, pg. 4**[3]**;** *see also* 29 C.F.R. § 785.18, requiring breaks of 20 minutes or less to be compensated.

52. At all relevant times, Defendants similarly failed to compensate Class Members for their 45-minute meal breaks and 15-minute short rest periods.

53. At all relevant times, Defendants knowingly and willfully operated their business with a policy of failing to pay wages to Plaintiff and Class Members for all hours they worked as a result of Defendants' policy of timeshaving compensable break periods.

**iv. Plaintiff's Claim of Unpaid Wages and Overtime due to Unidirectional Rounding**

54. At all relevant times, Defendants failed to compensate Plaintiff and Class Members for all hours they worked due to a policy of unidirectional rounding, in violation of the New York Labor Law, NJWPL, and NJWHL .

55. At all relevant times, Defendants required Plaintiff and Class Members to clock in and out for every shift and break in order to record their hours worked. However, Defendants

[3] https://dol.ny.gov/system/files/documents/2021/03/meal-and-rest-periods-frequently-asked-questions.pdf

utilized a rounding policy which always favored Defendants and always harmed Plaintiff and Class Members.

56. "Although no New York statute or regulation addresses the permissibility of rounding policies, New York's Department of Labor generally follows the FLSA and related regulations." *Canelas v. World Pizza, Inc.*, No. 14 Civ. 7748 (ER), 2017 U.S. Dist. LEXIS 50615, 2017 WL 1233998, at *10 (S.D.N.Y. Mar. 31, 2017). Under the FLSA, rounding practices are only tolerated when such rounding is neutral and therefore "averages out so that the employees are fully compensated for all the time they actually work." 29 C.F.R. § 785.48(b). "[R]ounding policies have been held to violate § 785.48(b) where they favor the employer and systematically undercompensate employees." *Boone v. PrimeFlight Aviation Servs., Inc.*, No. 15 Civ. 6077 (JMA) (ARL), 2018 U.S. Dist. LEXIS 28000, 2018 WL 1189338, at *7 (E.D.N.Y. Feb. 20, 2018).

57. At all relevant times, Defendants' rounding policy violated the New York Labor Law, NJWPL, and NJWHL because Defendants' rounding was always unidirectionally in favor of Defendants, and did not result in Plaintiff and Class Members being compensated for all hours they actually worked.

58. As a result of Defendants' improper rounding, Plaintiff and Class Members were not paid all owed wages, including overtime wages, for all hours they worked.

**v. Plaintiff and New York Class Members' Claims for Improper Wage Notices and Earning Statements:**

59. At all relevant times, Defendants failed to provide accurate wage notices and wage statements to Plaintiff and NY State Class Members, in violation of the Wage Theft Protection Act ("WTPA")—incorporated into the NYLL.

60. At all relevant times, Defendants paid Plaintiff and NY State Class Members either in cash or by personal check, and failed to provide any paystubs to them with every weekly payment.

61. In failing to provide proper wage statements and notices, Defendants have failed to comply with the law in a manner that entails a concrete harm to an interest identified by the New York State legislature. Following the decision in *Guthrie v. Rainbow Fencing Inc.*, 113 F.4th 300, 303 (2d Cir. 2024), Courts have generally held that there is no categorical bar on Article III standing for WTPA claims. Instead, the Second Circuit found that "[t]he lack of such notices and statements might impair 'an employee's ability to seek relief for violations they may not have information about'" to an extent sufficient to support standing.

62. New York Court continue to find sufficient standing to support standing to support these claims. One such Court stated the following at Summary Judgment:

> "Here, the Court determines that Plaintiffs have adequately alleged and established actual and concrete downstream harm as a result of Defendants' failure to provide the required wage and hour notices and wage statements. Plaintiffs have shown that "Defendants' violations impaired their ability to seek relief due to a lack of information." More than that, Plaintiffs have proved, and the Court agrees, that Defendants' failure to maintain proper wage statements because of their automatic meal-break deduction and eight-hour rounding led Plaintiffs to lose wages. These are exactly the types of harm that the Second Circuit considered to be sufficient to establish standing in *Guthrie*. Therefore, the Court finds for Plaintiffs on this issue."

*Sanchez v. Clipper Realty, Inc.*, 2026 U.S. Dist. LEXIS 36716, *61 (S.D.N.Y. February 23, 2026) (internal citations removed).

63. Here, Defendants' conduct has led to exactly the kind of injury contemplated in *Guthrie* and *Sanchez.* By failing to inform Plaintiff and NY State Class Members of the actual hours that they worked by not providing them with wage statements, Defendants were able to hide their wrongdoing, as Plaintiff and NY State Class Members were unaware of the fact that they were being underpaid. Had Defendants provided proper wage statements to Plaintiff and NY State

Class Members which accurately listed the total number of hours Plaintiff and NY State Class Members actually worked, as required by law, Defendants would have had to either (a) increase the wages to correspond to the hours actually worked or (b) forthrightly acknowledge, by way of the wage statement, that the employee's wages did *not* correspond to the hours the employee actually worked.

64. By failing to report all of Plaintiff's and NY State Class Members' hours, Defendants were able to reduce the employee earnings, and Defendants' contribution to those earnings, that they later reported to the IRS through the employee's W-2 form, as such information is derived from the information on employees' wage statements. The effect of reporting reduced wages on an employees' W-2 is, in turn, to reduce the amount of benefits available to the employee—such as unemployment benefits and social security benefits—as an employee's entitlement to benefits reflects how much money he or she is reported as having contributed to the social security system. As a result, Plaintiff and NY State Class Members were irreversibly injured with respect to their benefits (including social security benefits)—a fact which Defendants were able to hide from them by failing to provide them with proper wage statements.

65. Furthermore, Defendants failed to provide any wage notices to Plaintiff or NY State Class Members. Even if Defendants' provided wage notices, the wage notices would have been inadequate as they would have failed to provide employees' actual pay rates, which were reduced by Defendants' time shaving. Once again, had Defendants provided Plaintiff and NY State Class Members with wage notices that communicated the rates that Defendants actually intended to pay them, Plaintiffs and NY State Class Members would have been able to contest the unfair pay rates or choose not to take a job with Defendants. Instead, due to Defendants intentional hiding of that

information, Plaintiffs and NY State Class Members accepted their employments with Defendants without the knowledge that Defendants did not intend to be bound to their promised pay rates.

66. Defendants knowingly and willfully operated their business with a policy of failing to provide Plaintiff and NY State Class Members with wage notices and accurate wage statements, in violation of the NYLL.

67. Defendants knowingly and willfully operated their business with a policy of failing to provide Plaintiff with wage notices and accurate wage statements, in violation of the NYLL.

68. At all relevant times, Defendants knowingly and willfully operated their business with a policy of failing to compensate wages, including overtime wages, to Plaintiff and Class Members for all hours.

69. At all relevant times, Defendants knowingly and willfully operated their business with a policy of failing to provide Plaintiff with any wage notices and wage statements, in violation of the NYLL.

70. Plaintiff retained Lee Litigation Group, PLLC to represent Plaintiff and Class Members in this litigation, and has agreed to pay the firm a reasonable fee for its services.

## STATEMENT OF CLAIM

## COUNT I

## WAGE AND HOUR VIOLATIONS UNDER THE NEW YORK LABOR LAW

(On Behalf of Plaintiff and Class Members)

71. Plaintiff realleges and incorporates all the above allegations of this Complaint as fully set forth herein.

72. At all relevant times, Plaintiff and Class Members were employed by the Defendants within the meaning of the New York Labor Law, §§ 2 and 651.

73. Defendants failed to properly notify employees of their hourly pay rates and overtime rates, in direct violation of the NYLL.

74. Defendants willfully violated Plaintiff's and Class Members' rights by subjecting them to a policy of failing to pay overtime wages for all hours worked over 40 per workweek due to straight time pay for hours worked over 40 in a single workweek.

75. Defendants willfully violated Plaintiff's and Class Members' rights by subjecting them to a policy of failing to pay wages and overtime wages for all hours worked due to timeshaving.

76. Defendants failed to provide Plaintiff and Class Members with proper wage and hour notices, at their dates of hiring and annually, per requirements of the NYLL.

77. Defendants failed to provide Plaintiff and Class Members with proper wage statements with every payment as required by New York Labor Law § 195(3).

78. Due to the Defendants' New York Labor Law violations, Plaintiff and Class Members are entitled to recover from Defendants their unpaid wages, unpaid overtime wages and premiums, reasonable attorneys' fees, and costs and disbursements of this action, pursuant to the NYLL.

## COUNT II

## VIOLATIONS OF THE NEW JERSEY WAGE PAYMENT LAW AND THE NEW JERSEY WAGE AND HOUR LAW

79. Plaintiff realleges and incorporates all the above allegations as if fully set forth herein.

80. At all relevant times, Plaintiff and New Jersey Class Members were employed by Defendants within the meaning of the NJWPL § 34:11-4.1.

81. Defendants knowingly and willfully failed to pay Plaintiff and New Jersey Class Members for all hours worked, including overtime premiums for hours worked over forty each week.

82. Defendants knew of and/or showed a willful disregard for the provisions of the New Jersey Wage and Hour laws as evidenced by their failure to compensate Plaintiff and New Jersey Class Members their proper wages, including their proper wages and overtime premiums, when Defendants knew or should have known such was due.

83. Due to the Defendants' NJWPL and NJWHL violations, Plaintiff and New Jersey Class Members are entitled to recover from Defendants unpaid overtime premiums; unpaid wages, including overtime; reasonable attorneys' fees; liquidated damages; statutory penalties and costs and disbursements of the action, pursuant to the NJWPL and NJWHL.

## COUNT III
## VIOLATION OF APPLICABLE STATE WAGE AND HOUR LAWS

**(brought on behalf of a Rule 23 Class)**

84. Plaintiff realleges and incorporates all the foregoing paragraphs of this Class Complaint as if fully set forth herein.

85. At all relevant times, Class Members were employed by Defendants within the meaning of the applicable state wage and hour laws, just as Plaintiff was employed by Defendants under the meaning of the FLSA.

86. Plaintiff can represent the Class because the requirements of the FLSA and the requirements of the state labor laws enumerated earlier are identical for purposes of his and Class Members' overtime class claims.

87. Defendants knowingly and willfully violated Plaintiff's and Class Members' rights by failing to pay them for all hours worked, including the proper overtime compensation at rates

of not less than one and one-half times the regular rate of pay for each hour worked in excess of forty (40) hours in a workweek due a policy of underreporting employees' hours, in violation of the state wage and labor laws outlined above.

88. Defendants knowingly and willfully failed to provide proper wage statements and notices to Class Members, as required under State wage laws.

89. Due to Defendants' state law violations, Plaintiff and Class Members are entitled to recover from Defendants their unpaid compensation for all hours worked, unpaid overtime premiums, statutory penalties, liquidated damages, and reasonable attorneys' fees and costs and disbursements of the action.

90. Defendants failed to properly notify and compensate Plaintiff and Class Members of their hourly pay rates and overtime rates, in direct violation of the State wage laws (as applicable).

91. In addition to violations of State Labor overtime laws under which Plaintiff brings class (not individual) claims, Defendants violated State provisions requiring employers to pay employees all wages owed. Since overtime wages are owed under the FLSA, these laws encompass Class Members' claims.

92. Some states' wage and hour or wage payment statutes may prescribe means other than class actions for pursuing common claims. Any state restrictions on class actions are irrelevant, however, as this case was filed in federal court, where the Federal Rules of Civil Procedure hold. See *Shady Grove Orthopedic Assocs., P.A. v. Allstate Ins. Co*., 559 U.S. 393, 400 (2010) (F.R.C.P. 23 authorizes "class actions across the board" notwithstanding state law restrictions on class actions); *Dremak v. Iovate Health Scis. Grp., Inc. (In re Hydroxycut Mktg. & Sales Practices Litig.)*, 299 F.R.D. 648, 654 (S.D. Cal. 2014) ("[A]pplication of Rule 23 to

Plaintiffs' [FBPA] claims does not run afoul of the Rules Enabling Act. Rule 23 governs Plaintiffs' claims, and Plaintiffs' claims are not subject to dismissal based on the state statutes prohibiting class actions.”).

93. Due to Defendants’ state law violations, Plaintiff and Class Members are entitled to recover from Defendants their unpaid wages, unpaid overtime premiums, statutory penalties, liquidated damages, and reasonable attorneys’ fees and costs and disbursements of the action.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff, on behalf of herself and Class Members, respectfully requests that this Court grant the following relief:

a. A declaratory judgment that the practices complained of herein are unlawful under the NYLL, NJWPL, and NJWHL ;

b. An injunction against Defendants and their officers, agents, successors, employees, representatives and any and all persons acting in concert with them as provided by law, from engaging in each of the unlawful practices, policies and patterns set forth herein;

c. An award of unpaid overtime premiums due under the NYLL, NJWPL, and NJWHL;

d. An award of unpaid wages and overtime wages as a result of Defendants’ timeshaving policies and straight time pay, due under the NYLL, NJWPL, and NJWHL ;

e. An award of liquidated, penalties, and/or punitive damages as a result of Defendants’ willful failure to pay wages pursuant to the NYLL, NJWP, and NJWHL for Plaintiff individually, which is expressly waived in the event a class is certified;

f. An award of pre-judgment and post-judgment interests, costs, and expenses of this action together with reasonable attorneys’ fees;

g. Designation of this action as a class action pursuant to Fed. R. Civ. P. § 23;

h. Designation of Plaintiff as Representative of the Class; and

i. Such other and further relief as this Court deems just and proper.

## JURY DEMAND

Plaintiff demands trial by jury on all issues so triable as of right by jury.

Dated: May 13, 2026
New York, New York

Respectfully submitted,

**LEE LITIGATION GROUP, PLLC**
C.K. Lee (2903557)
Anne Seelig (4192803)
148 West 24th Street, 8th Floor
New York, NY 10011
Tel.: 212-465-1188
Fax: 212-465-1181

*Attorneys for Plaintiff and the Class*

By: /s/ *C.K. Lee*
C.K. Lee, Esq.